MEMORANDUM **
California state prisoner Jose Luna appeals from the district court’s judgment *941 denying his 28 U.S.C. § 2254 petition. We review de novo a district court’s decision to deny a § 2254 petition, see Emery v. Clark, 643 F.3d 1210, 1213 (9th Cir.2011), and we affirm.
1. Luna asserts he was deprived of due process when the attorney prosecuting his case took the stand during his trial and gave testimony that supported the credibility of a witness who, having previously identified Luna as one of two shooters who killed one man and injured another, later recanted and refused to identify Luna in court. We hold that, even assuming, for the sake of argument, a violation of clearly established law, see Parker v. Matthews, — U.S.-, 132 S.Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam), Luna has not shown the prosecutor’s testimony “had substantial and injurious effect or influence in determining the jury’s verdict.” Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (internal quotation marks omitted).
First, Detective Lowe, who conducted Alarcon’s pretrial interviews, testified as to Alarcon’s prior identifications of Luna and Picado as the shooters. Lowe testified that Alarcon was “positive” when he first identified Luna from a photograph array and selected Alarcon’s photograph “almost immediately.” The photograph of Luna as identified by Alarcon was shown to the jury, and Lowe testified that the writing beneath the photograph, which stated, “Pm positive seeing him shooting some kind of semi-automatic gun at the Black guys,” was Alarcon’s writing. Lowe also testified that Alarcon’s signature was beneath Luna’s photograph and that Alarcon had drawn the circle around Luna’s photograph. In addition, Lowe testified that Alarcon had complained to the government that his family was threatened and said that he was afraid to testify against Luna and Picado.
Second, Alarcon testified and, although he recanted his earlier identifications, admitted that the signature beneath Luna’s photograph was his signature. We agree with the California Court of Appeal that Alarcon’s “complete denial at trial was inherently unbelievable” in the face of Lowe’s testimony and Alarcon’s acknowledged signature beneath Luna’s photograph.
Finally, when prosecutor Enomoto took the stand, he did not testify as to Alarcon’s critical original identification of Luna, as he was not present during that interview. Rather, Enomoto testified only as to the later interview, during which Alarcon confirmed his earlier identifications. And, as to this subsequent interview, which only corroborated Alarcon’s earlier, documented identification, Enomoto simply repeated Alarcon’s own statements at the second interview, testifying that Alarcon “said he was positive about the previous identifications he made from the photographs;” that when asked if he was “sure” about those identifications, Alarcon had said “yes”; and that Alarcon did not express any hesitation about his earlier identifications and was instead “unequivocal about his previous ID’s.”
Under the circumstances, we conclude that Enomoto’s testimony likely had little, if any, impact on the jury’s assessment of Alarcon’s earlier out-of-court identification, and thus did not have a “substantial and injurious effect or influence” on the verdict. Brecht, 507 U.S. at 637, 113 S.Ct. 1710 (internal quotation marks omitted).
2. Luna also contends that he received ineffective assistance of counsel because his lawyer failed to object to the *942 prosecutor’s testimony before it began. We reject this claim, as well.
Enomoto was called to the stand principally to testify that, at the interview which Enomoto attended, Alarcon said that someone known as “Wicked” was one of the individuals with a gun; “Wicked” was the nickname of a different individual, not Luna or his co-defendant. In his testimony, Lowe had denied that Alarcon said “Wicked” had a gun, and counsel for both defendants clearly agreed with the prosecution that Lowe’s incorrect testimony needed to be corrected. Because Enomo-to’s central testimony contradicted Lowe’s testimony, it had the potential to undermine Lowe as a witness generally, and thus to benefit Luna. Indeed, Luna’s counsel actively sought Enomoto’s testimony, indicating at one point that he himself would call Enomoto to the stand and refusing to enter into a stipulation that Alarcon said that “Wicked” had the gun, which would have rendered Enomoto’s testimony unnecessary.
The particular part of Enomoto’s testimony to which Luna now objects — the repetition of Alarcon’s confirmation of his pri- or identification of Luna — was simply a recounting of the rest of the same interview at which Alarcon had mentioned “Wicked,” and so fairly included to provide the jury with a complete picture of that interview. The California Court of Appeal’s ruling that defense counsel likely had a tactical reason for not objecting before Enomoto took the stand, and that counsel’s performance therefore was not deficient, was thus a reasonable application of clearly established Supreme Court law. 28 U.S.C. § 2254(d)(1); Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011).
AFFIRMED.
Judge NOONAN concurs in the judgment.

 This disposition is not appropriate for publication and is not precedent except as provided by 9 th Cir. R. 36-3.